SWITZER v. ANN ARBOR RAILROAD CO.

RAILROADS—CROSSINGS—PLANKING—NEGLIGENCE.

Where defendant operated gasoline motor cars on its railroad for the convenience of local traffic, and provided stations at highway crossings at which passengers could wait for cars that stopped on signal, and it appeared that plaintiff and her companion, in the daytime, came to a highway crossing to take a car and plaintiff attempted to cross the track to the side from which they boarded the car, and in doing so stepped in the crevice between planks and rail, which was of the usual width of 3½ inches, and of a depth of 2½ to 4 inches, caught her foot and fell so that she wrenched and injured her knee, she was guilty of contributory negligence, under proofs showing that she was familiar with the station and crossing, which she had used frequently, and plaintiff was chargeable with such knowledge of the ordinary conditions and dangers there as were open to observation. And the failure of defendant railroad corporation to provide suitable and proper apparatus for signaling its cars was not the proximate cause of the injury to plaintiff, who left the matter of signaling to the person who accompanied her, and was proceeding to the point at which passengers. boarded the motor cars, without attempting, herself, to. give the signal.

Error to Livingston; Miner, J. Submitted October 13, 1915. (Docket No. 79.) Decided January 3, 1916.

Case by Hazel Switzer against the Ann Arbor Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed; new trial denied.

*Gustavus Ohlinger* and *Francis J. Shields* (*Alex L. Smith*, of counsel), for appellant.

*Louis E. Howlett*, for appellee.

STEERE, J. Plaintiff recovered a judgment against defendant in the circuit court of Livingston county for damages resulting from an injury which she sustained on November 20, 1912, in crossing defendant's track on a highway at or near a flag stop or station, called Brooks, south of the city of Howell in the township of Hamburg, in said county. At this point defendant's track runs north and south with a slight trend to the northeast and southwest and is crossed by an east and west highway tending slightly northwest and southeast. The railway track is absolutely straight from this crossing for a considerable but unimportant distance south and for some 12 or 15 rods to the north where it curves slightly to the west and runs thence due north about three-fourths of a mile. In addition to its regular locomotive-drawn train service defendant ran two gasoline motor cars over its road daily each way carrying passengers and express, and this crossing was made a signal stopping place, or flag station, for that service; a sign marked "Brooks" was put up on a post by the side of the highway near defendant's track. This was in 1910, since which time gasoline motor cars stopped there when signaled. Otherwise it was not known or recognized as either a regular or flag station, and no other trains or cars ever stopped there except on a rare occasion when a motor car was disabled and steam-drawn service temporarily put in its place. No tickets were sold at Brooks, no employees of defendant were stationed there, and no cars stopped there unless some one was waiting and signaled, or passengers on board gave notice of their desire to get off. The only convenience for patrons provided by defendant was a platform, or leveled place four inches high, located on the west side of the track within the highway limits, and south of the roadway or traveled portion. This platform was 15 feet long, north and south, and six feet wide, east and west,

made by placing four timbers in a parallelogram and
filling the inclosure with cinders. From its east edge
to the west rail of the track was 2 feet 10 inches. Back
of this platform, however, at a distance of about 11
feet from it, a small shelter house or waiting place
with board roof had been constructed by persons resi-
dent in that vicinity.

Defendant's track at this point runs between two
rather low hills, the land on its west beginning to rise
from near the right of way, while on the east side a
level marsh extends for some 20 feet upon which the
traveled portion of the highway is raised over 4 feet,
by a grade or fill, to where rising ground is reached.
The improved portion of the highway is about 15 feet
wide where it crosses defendant's track, and, as re-
quired by statute, defendant had constructed at this
intersection a crossing for the passage of teams by
fitting down seven 3-inch planks about 16 feet long be-
tween and on each side of the rails of its track, run-
ning north and south parallel with the rails. Five of
these are between the rails, and two respectively on
the outside of each rail. On the inside of the rails a
strip or space was left 3½ inches wide and between
2½ and 4 inches deep, such construction being neces-
sary to allow the passage of the car wheel flanges. The
width of a car wheel from the inside of the flange to
the outside of the wheel is 7 inches, and the flange has
a width of an inch and a half; the distance from the
inside edge of the flange to the inside edge of the rail
on which the wheel runs being 2¼ inches. From the
south end of this plank crossing of the highway to the
north edge of the platform, provided for convenience
and safety in boarding or leaving a car, is 12 feet 5
inches.

Plaintiff resided with her parents in Hamburg
township about a half mile east of this crossing. She
was familiar with conditions at the crossing, having

been in the habit of taking the gasoline motor cars at Brooks from the time they began running, and had ridden upon them to and from Ann Arbor, where she went to take music lessons, almost weekly for nearly two years. On the day in question she walked over from her home in company with an acquaintance named John Martin to take the south-bound motor car due to pass Brooks about 1 o'clock. The weather was rainy and the ground slippery. When they approached the planking Martin stopped on the east side of the track, from where both testify they usually flagged a car approaching from the north because they could see it and the operator of the car see them for a greater distance. She states that she does not remember crossing to the west side before the accident, but they were at the crossing about a minute before it happened. She left him standing on the east side watching for the car and started on toward the west side of the track walking in about the center of the road. In going over the planked crossing of the highway she caught her foot between the planking and rail, falling over in such a manner as to wrench her knee. She describes the accident in part as follows:

"My right foot slipped in between the rail and plank, throwing me to the ground towards the west. * * * The hole is from 3 to 3¾ inches wide and about 4 inches deep. I had on a high-top shoe. My toe was pointed to the south. I was thrown to the west across the track and fell down. I could not get up alone and Mr. Martin assisted me. I don't know how long it took us to get my foot out. It seemed a long time. We finally succeeded and then the car came along and we boarded it and went to Ann Arbor. My knee pained me that night."

Both she and Martin identify the place where her foot was caught, which she called a "hole," as the space left on the inner side of the east rail for the car wheel flanges to run, and which they state was about the

same width and depth the whole length of the planking.

When the car arrived, about 15 minutes after they reached the crossing, Martin stopped it by signaling, he did not remember from which side, and, boarding it, they went to Ann Arbor. It developed later that the wrench had injured her knee joint quite seriously, requiring medical attendance and the use of a plaster of paris cast for a time. The nature and extent of the injury is not in controversy.

Plaintiff's grounds of negligence, as stated in her declaration, are:

"That the defendant utterly failed to perform its duty in that at its said station of Brooks on, to wit, the said 20th day of November, 1912, it failed to keep the premises used by its patrons for the purpose of observing the approach of its cars from the north and signaling the same to stop and enter the same in a reasonably safe condition, but permitted holes and excavations to exist therein; that it also failed to perform its duty in that it failed to provide suitable and proper apparatus, methods, and appliances to be used by its patrons at said station of Brooks to signal its cars approaching said station to stop. And plaintiff avers that it further failed in its duty in that it permitted a large hole and crevice to exist between the planking which was laid between the rails at said station of Brooks and the easterly rail at the place which was used by its patrons for the purpose of observing the approach of its cars from the north and signaling them to stop."

The charge of negligence in failing to keep the premises used by its patrons for the purpose of observing the approach of cars from the north and signaling them in safe condition, is based upon the claim that topographical conditions were such that it was necessary for those desiring to signal cars from the north to do so from the east side of the track, where they had a further view in that direction along the track and could

see approaching cars sooner than from the west side. Plaintiff, her father, and Martin testified, under objection, that they almost always signaled the cars from the east side, finding it better and more convenient, though all admitted that they had signaled cars from the west side which stopped when they did so, but claimed that when flagged from the west they were apt to stop beyond the platform, rendering it necessary to follow down the track in order to get upon them.

Verified photographs of the location, offered in evidence, while showing a rise of ground on each side of defendant's track, disclose no sharp or high hills obstructing the view for a reasonable distance to the north, and the photographer who took these pictures testified that by actual measurement a man could be seen approaching on the track from the north 573 feet from a point opposite the center of the platform at the crossing, and that the distance from the platform to the north where all of a car approaching could be seen was 375 feet, while the top of a car approaching from that direction could be seen 814 feet. The accuracy of these measurements and the correctness of the photographs offered in evidence in connection with them were not disputed except by general assertions as to the difficulty in signaling a car from the west side in time for it to stop at the platform.

Defendant timely interposed a motion and requests for a directed verdict on the ground that no actionable negligence was shown; that the accident occurred in the traveled portion of a highway, not at the place of boarding or leaving its cars, and, if imputable to the negligence of any one, it was caused by plaintiff's own negligence. These objections were overruled and the case submitted to the jury, the court charging, among other things, as follows:

"The first question for you to determine is whether

the defendant was guilty of negligence in fixing these planks as it did and permitting them to remain there on this day in question. Now, the statute of this State reads as follows:

"* * * 'Shall construct suitable road and street crossings for the passage of teams by fitting down planks between and on each side of the passage and on each side of the rails of such road, the top of which shall be at least one-half inch higher than the top of the rails of such road.'

"The reason I call your attention to this is simply for the purpose of showing that it was the duty of the railroad company to place those planks there between their rails. There can't be any negligence claimed because they put them there. The only question for you to determine upon that point is whether in placing them there, or whether at this time, on the 20th day of November, 1912, they were in such a position that it was negligence upon the part of the company in permitting them to remain that way. * * * It is the law of this State that it is the duty of the company, that is, the railroad company, to provide a reasonably safe place for the ingress and egress for its station, that is, a place to go to its station—near its station. That means that part of the premises over which they have control. It does not mean outside, for instance a highway outside, but it means that portion which the company itself has control of. So in this case, gentlemen, did the company on this day in question provide an egress, a place to get there, that was reasonably safe, that was a reasonably safe place to its station. * * * The defendant in building these planks would have a right to build them far enough away so it would not interfere with its track, that is, its wheels running over the track—the rails."

It was shown that a space of 3½ inches between the inside rails and the planking was a standard and recognized essential for the flange of car wheels to run freely and avoid derailment. Plaintiff's testimony fails to point out faulty construction, want of repair or how this crossing could be more safely built to serve the double use for which it was intended. She

was injured at this crossing while walking along the central traveled portion of the highway over which she had passed many times and where, as required by statute, defendant had planked the crossing solely for the purpose of making it suitable and convenient for use as a public thoroughfare. This was first done when defendant built its road, the highway being then in existence, and so long before any stops were made by these cars at Brooks that the planking had been renewed shortly before the motor cars were put into operation. It bore no relation to the so-called station grounds, or the stopping point later selected and prepared for receiving and discharging passengers except its proximity as a part of a passing roadway devoted to public travel.

These single gasoline motor cars, though running on tracks of a regular steam power railroad, were in service and operation analogous to interurban trolley cars, supplementing regular steam service, stopping on signals at points not recognized or accommodated by steam-drawn trains. As applied to such service many of the requirements imposed upon railroads at regular stations are not appropriate or imperative, and the chief duty at country crossings like the one in question is to provide passengers with a safe place to get upon or off from the car, with reasonably safe access to and from the regularly traveled portion of the highway or some other place of safety. Passengers having alighted in safety from such cars in a public highway at a point from which they can safely depart where and as they please, thereafter cease to be passengers and become merely travelers upon the highway.

A fatal infirmity as ground of recovery to plaintiff's claim in her declaration that defendant "failed to provide suitable and proper apparatus, methods, and ap-

pliances" for signaling its cars to stop, or a safe place from which to signal, lies in the fact that such alleged delinquency, whatever it was, did not cause or contribute to her injury, for her own testimony discloses that she had not signaled, was not trying to and did not intend to do so, but had just arrived at the crossing from her home, located to the east, a moment before the accident, and leaving Martin to watch for and signal the car at what was thought the most advantageous point for that purpose, she was walking on to the place provided for taking the car when it came. The car was expected to, and did, stop without any action or efforts on her part to signal it. It is elementary that, even though proven, negligence which does not cause or contribute to the injury complained of affords no ground of recovery.

Irrespective of defendant's negligence, plaintiff has failed to show herself free from contributory negligence, which is a prerequisite to recovery. The accident occurred in broad daylight, shortly after noon, when she was waiting for the car, with abundant time to notice conditions under foot and watch where she stepped. It was wet and slippery walking and she had observed that fact. She had been traveling almost weekly over this crossing for nearly two years and had as good opportunity to know of its condition, and the opening between the rails and planking, as defendant or its employees. Whatever dangers existed were plainly open to view. If she had looked she must have seen and could have easily avoided them. She does not even testify she was unaware of the existence of this space in which her foot was caught. She is held to have seen what she actually could have readily seen had she looked. Her familiarity with the location makes this an even stronger case of contributory negligence than *Whitmore* v. *Railway*, 185 Mich.

46 (151 N. W. 651), wherein it was held plaintiff's contributory negligence precluded recovery.

The judgment is therefore reversed, without a new trial.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.